McFarland, J.,
delivered tlie opinion of tbe Court.
Tbe prisoner was indicted in tbe Circuit Court of De-Kalb county, for the murder of Eacbel H. Billings. At *469 the July Terra, 1871, he was tried by a jury, who found him guilty of murder in the first degree. His motions for a new trial and in arrest of judgment, were overruled, and the judgment of death pronounced upon him, from which he has appealed to this Court.
The first ground relied upon for a new trial, is: The bill of exceptions states, that, “In the selection of the jury, nine of those selected as jurors, stated upon their examination, that they had formed or expressed an opinion concerning the guilt or innocence of the prisoner, upon rumor, and flying reports, and that they had never heard any of the witnesses speak of the case, or heard any one detail the facts or evidence in the case, and had formed their opinion merely from general rumor.” The defendant’s counsel excepted to the competency of these jurors, but the court held them competent.
In the case of Alfred and Anthony v. The State, 2 Swan, it was held, that an opinion formed from rumor or report, does not disqualify the juror. The same doctrine is held in the case of Moses v. The State, 11 Hum., 232, and in the case of Payne v. The State, 3 Hum., 375. In the first named case, Judge Caruthers says: “That it is not the existence of an opinion either way, which constitutes the disqualification, but the grounds upon which it is formed; or it might be speaking more correctly to say, that the law does not regard it as an opinion at all, unless it is based upon a knowledge, or reliable information of the facts.”
We do not deem it necessary in this case to enquire into the correctness of these authorities quoted. The bill of exceptions does not show that the prisoner exhausted *470 bis peremptory challenges. It was held, in the case of McGowan v. The State, 9 Yer., 184, that if a juror, incompetent on account of opinion, was selected upon the jury, and the prisoner fails to exhaust his peremptory challenges, that the objection is waived. The correctness of this rule seems to be recognized in the cases of Moses v. The State, 10 Hum., 456, and in Alfred and Anthony v. The State, 2 Swan, 581. The principle seems to be, that as the prisoner does not exhaust his challenges, he voluntarily accepts the jurors, with a knowledge of their opinions; and upon this latter ground, we hold that the objection to the jurors can not now be made. Upon these authorities, we do not feel authorized to grant the prisoner a new trial upon this ground.
The State proved by Sarah Eigsby and Lucinda Billings, statements made to them, shortly after the murder, by Inez Certain, the daughter of the deceased, some twelve or thirteen years old, as to the facts attending the murder, and as to who did the killing. This, it is admitted, was illegal evidence, but the bill of exceptions shows that no objection was made to the testimony, by the prisoner, at the time of its introduction, but afterwards his counsel moved the court to exclude the evidence, which his Honor the Circuit Judge, promptly did, remarking that had the objection been made sooner, the evidence would not have been heard.
We can not now hold this to be error. It is true that in'a case involving the life of a citizen, the court would not be disposed to hold the prisoner bound by his acts in the conduct of his trial with the same strictness that would apply in a civil case. We would not suffer *471 injustice to be done bim on account of any mere inadvertence of himself or bis counsel; but we think the prisoner might, if he chose, agree to admit the illegal testi» mony. He might have been advised that it was better to waive exception to this testimony and admit it. Inez, the little girl whose statements are proven, was a witness. The object of the prisoner’s counsel, doubtless, was to allow these statements to be proven, with a view to contradicting them. The testimony being admitted in this manner, all that the prisoner could ask would be to have it excluded whenever he moved the court to do so. This was done. And as we can not see that the prisoner has been prejudiced by the testimony, we can not reverse upon this ground.
No further exception is taken to the action of the court below. The law was fully and correctly expounded to the jury. It but remains to see whether the facts in proof create such a doubt of the prisoner’s guilt as to authorize a new trial under the rules upon which this court acts in such cases. The prosecutor, James Billings, the husband of the deceased, proves that he left his house in DeKalb county, and went down the river on a raft, leaving his wife and three children at home, alone in a cabin. Inez, the oldest, was his step-daughter, the others were younger. He left home on Saturday; told the defendant, who lived about a quarter or half mile from him, that he was going down the river. He found his wife, when he returned, in her grave. He had her taken up and moved to another grave. She had been murdered in his absence. It appears fully in proof, that on the night of 29th January, 1871, after James Billings had left home, that his wife, *472 Rachel Billings, was murdered. Her daughter, Inez, between twelve and thirteen years of age, proves that her mother and herself, and two little children, were at home alone; that she was awakened in the night by the dog barking; that a man came, put his hand through the crack, opened the door and came in; jerked her mother from the bed, who at the-same time jerked the gun from the rack. She, witness, got the ax and struck the man. He then jerked the ax from her, and struck witness on the head, and knocked her to her knees. She then laid down behind a chair and looked through the chair. The man then struck her mother on the head with the ax, three licks, and knocked her down; he was then down on the floor with her mother, who was groaning; he remained a short time and left. He came in at the upper door, and went out at the lower door, Avashed his hands in the water bucket and left. Witness got back in bed and stayed until morning. She was afraid to leave. She says there was fire light in the house; that she knew the man; that it was the prisoner, John Preswood; that he was barefooted, had no hat, coat or pants on. It is proven that Inez gave the alarm the next morning to Mrs. Rigs-by, who visited the house, and soon after a number of others. The body of Rachel Billings was found upon the floor dead, with one or more mortal wounds upon the head, made apparently with an ax; the ax was lying, the pole and handle bloody; the gun was also there, the gun rack being broken. The body was partly uncovered; various marks of violence were upon the body; there were finger prints upon her throat, as if she had been choked; there was the print of a bloody right hand upon the floor *473 near tbe body. Tbe water in tbe water bucket looked colored, as if with blood, also tbe gourd handle. There were wounds upon tbe bead of tbe little girl Inez, and tbe place where she had lain upon tbe floor was marked with blood. Tbe defendant lived at bis father’s, between a quarter and half a mile off. It is in proof that barefooted tracks were found going from tbe direction of where the prisoner lived, towards tbe bouse where tbe murder was committed, and returning. These tracks could be traced about half or two-thirds of the way, and were then lost, owing to the nature of the ground. This track seemed to have gone in at tbe upper door, and gone out at tbe lower door of Billings’ bouse. When these tracks were measured, and the measure applied to tbe prisoner’s foot, tbe measure seemed to be a little tbe longest; but when tbe prisoner stood up and bore bis weight upon his foot, tbe measure corresponded with tbe length of bis foot. Part of tbe witnesses who first examined the prisoner, found no blood upon bis clothes or person, except what appeared to be a sign of blood upon bis shirt sleeves. One other witness says be thought be saw blood upon his drawers; bis feet and ankles were scratched and bloody— looked as if it might have been done the night before; there were bamboo briars along the path. Some five witnesses prove that a day or two after the prisoner was put in jail, that his shirt and drawers were taken off. He was arrested the day after the murder; the shirt and drawers were identified. These witnesses prove that there were various distinct marks and streaks of blood upon these garments. It appeared that there had been an attempt to wash out these stains.
*474 The prisoner was a stout young man at the time, eighteen or nineteen years old; he knew that Billings was from home; he was at the house of the deceased on Friday before the murder; his manner in looking at the deceased attracted the attention of a female witness who was present. He was at the house again Sunday evening; deceased told him as he was leaving to tell one of his sisters to come and stay with her that night. He said that he would tell her, but he did not know that she could come. It does not appear that he did tell her. It is in proof that the little girl Inez had seen the prisoner often and knew him well.
Upon these facts, is there any room to doubt? The father and two sisters of the prisoner are introduced to prove an alibi. They prove that about dark, the prisoner and his three sisters went to the house of Bigsby, near by, and stayed until nine or ten o’clock; that they returned home; prisoner at once went to bed — was complaining of headache; that they heard him during the night, complaining; that he could not have gotten out of the house without their knowledge.
The two sisters are contradicted in material particulars, and are shown to have made different statements before the Justice, upon the preliminary examination; and the force of their testimony is greatly impaired; but it is manifest from their statements that the prisoner might have left the house without their knowledge. It is shown that they endeavored to get other witnesses to swear to the same facts, and when asked if they had not done so, denied it.
No evidence is introduced throwing the slightest sus *475 picion upon any one else. It was in tbe winter season. The fact that the guilty man was barefooted, without hat or coat, would clearly indicate that he had come but a short distance.
Upon a careful and anxious review of all the testimony, we are forced to say that the prisoner’s guilt is established; that he committed this most atrocious murder most probably in the perpretation of, or attempt to perpetrate, another most brutal crime.
The judgment must be affirmed.